| | |
|---|---|
| UNITED STATES OF AMERICA ex rel., ) <br> GREGORY W. THORPE, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> GLAXOSMITHKLINE PLC, et al. ) <br> ) <br> Defendants. ) <br> ) | **Civil Case No. 03-10641-RWZ** <br> **Civil Case No. 03-10398-RWZ** |

**CROSS & BENNETT, L.L.C.'S**
**OPPOSITION TO MOTION OF THORPE AND HAMRICK**
**TO STRIKE CROSS & BENNETT'S ATTORNEY'S LIEN AND NOTICE**
**OF ATTORNEY'S LIEN AND FOR RELEASE OF SETTLEMENT FUNDS**

Without any basis in fact or law, Relators Gregory W. Thorpe ("Thorpe") and Blair

Hamrick ("Hamrick") have moved to strike the Attorney's Lien asserted by Cross & Bennett,

L.L.C. ("Cross & Bennett") and to cause all relators' share payments to be released to Thorpe

and Hamrick before the value of the Attorney's Lien has been adjudicated and reduced to

judgment by this Court. Cross & Bennett respectfully requests that the Court deny Thorpe and

Hamrick's motion for at least the following reasons:

**First**, Cross & Bennett has a valid charging lien under two different prongs of the

relevant statute. Pursuant to the second prong of Colorado Revised Statute ("C.R.S.") 12-5-119,

Cross & Bennett has a charging lien upon "any judgment they may have obtained or assisted in

obtaining, in whole or in part." "Judgment" has been construed by Colorado federal courts to

include a settlement, like that obtained in the instant case. *See, e.g.*, *Davis v. Kutak Rock, LLP*,

Civ. A. No. 09–cv–02768-REB–MJW, 2012 WL 975836, *2 (D. Colo. March 22, 2012); *Deitz v.*

*University of Denver*, Civ. A. No. 95–cv–02756–WDM–OES, 2011 WL 723118, *9-10 (D. Colo. Feb. 22, 2011).

Cross & Bennett also has a charging lien pursuant to the third prong of C.R.S. 12-5-119, which provides for a charging lien "on any and all claims and demands in suit for any fees or balance of fees, due or to become due from any client." *Donaldson, Hoffman & Goldstein v. Gaudio,* 260 F.2d 333, 335 (10th Cir. 1958). An attorney's lien pursuant to this prong "attaches to settlement proceeds" for "services provided by the attorneys prior to their withdrawal for which they were entitled to be compensated." *Cope v. Woznicki*, 140 P.3d 239, 241 (2006). Thorpe and Hamrick argue that the qui tam action was not "in suit" for purposes of this prong because the qui tam complaint was filed, but not served upon the defendants. However, they fail to cite a single Colorado case that holds service is necessary for a case to be "in suit." Instead, they grossly distort the settled law of Colorado, which unambiguously holds that a case is "in suit" for purposes of the charging lien statute when it is "commenced." Both Federal Rule of Civil Procedure 3 and Colorado Rule of Civil Procedure 3 explicitly state that a case is "commenced" *when a complaint is filed*. Because Cross & Bennett filed the federal qui tam complaint in January 2003, its charging lien properly attaches to the settlement arising therefrom.

**Second**, Cross & Bennett have properly claimed a lien on 40% of the relators' share due to Thorpe and Hamrick. That represents the maximum amount in quantum meruit that could be due to Cross & Bennett under Colorado law given the terms of the Contingent Fee Agreement executed by Cross & Bennett and Thorpe and Hamrick. There is no legal impediment to asserting a lien equal to the maximum amount that could be due to Cross & Bennett.

**Finally**, the Court may properly order 40% of the relators' share due Thorpe and Hamrick to be retained without imposing an attachment. Cross & Bennett's attorney's lien

provides more than a sufficient basis for such action by the Court and is consistent with the authority of this Court. Moreover, the equities of retaining the funds pending resolution of this dispute greatly favor Cross & Bennett. Given Thorpe and Hamrick's relentless campaign to deny Cross & Bennett any recovery, releasing these funds prematurely would render collection of a judgment against Thorpe and Hamrick nearly impossible.

## BACKGROUND

On July 2, 2012, the Department of Justice ("DOJ") announced that GlaxoSmithKline ("GSK") had agreed to plead guilty and pay *$3 billion* to resolve this consolidated civil matter and related criminal liability arising from GSK's unlawful promotion of certain prescription drugs, its failure to report certain safety data, and false price reporting practices.

Thorpe and Hamrick were represented by Cross & Bennett in connection with this matter from November 2002 into November 2009. Significantly, Cross & Bennett agreed to represent Thorpe and Hamrick almost 10 years ago, when liability arising from the off-label promotion of drugs was unsettled law and any recovery was uncertain. For seven years, Cross & Bennett worked tirelessly on behalf of Thorpe and Hamrick. Cross & Bennett filed the relevant qui tam complaint in Colorado on January, 2, 2003 and served it on the government in accordance with 31 U.S.C.A. 3730(b)(2). It was this filing that first alerted the government to fraud by GSK.

From the date the qui tam complaint was filed until its termination in November 2009, Cross & Bennett worked successfully with the United States, the various states, and counsel for other relators to build the case against GSK. The results they achieved were astonishing: GSK's settlement is *the largest combined federal and state health care fraud recovery in a single settlement in the history of the United States. Thorpe and Hamrick will receive relator payments totaling approximately $75 million.*

Late in 2009, when a large settlement appeared probable, Thorpe and Hamrick began efforts to bully Cross & Bennett into reducing its contingency fee. Cross & Bennett had completed the vast majority of the work necessary to support the qui tam complaint that ultimately resulted in the historic recovery against GSK. In fact, DOJ had already begun settlement negotiations with GSK. When Cross & Bennett refused their demands to renegotiate the fee agreement, Thorpe and Hamrick began to falsely accuse Cross & Bennett of ethical violations and malpractice. Thorpe and Hamrick tied these allegations to further demands that Cross & Bennett reduce its contingency fee, threatening to terminate the firm, sue for malpractice, and file disciplinary complaints unless Cross & Bennett agreed to a fee reduction. Cross & Bennett continued to refuse to discount its fee further. Contrary to Thorpe & Hamrick's accusations, Cross & Bennett, through years of dedicated representation, was instrumental in achieving the extraordinary results which will now leave Thorpe and Hamrick very wealthy men.

True to their word, Thorpe and Hamrick terminated Cross & Bennett by facsimile on October 21, 2009. Even after terminating Cross & Bennett, Thorpe and Hamrick continued to threaten Cross & Bennett with malpractice suits and disciplinary actions unless the firm acquiesced to their demands.

The District of Colorado permitted Cross & Bennett to withdraw from 1:03-cv-00008-WYD-BNBC on November 9, 2009. With permission of the court, Cross & Bennett filed a Notice of Attorney's Lien in that case in Colorado on November 12, 2009.

The compensation agreement between Cross & Bennett and Thorpe and Hamrick was set forth in the operative Contingent Fee Agreement dated February 1, 2007 (attached as **Exhibit 1** hereto). Per the Agreement, Cross & Bennett was to receive 40% of the "Gross Amount Collected" by Thorpe and Hamrick in connection with the False Claims Act litigation. Further,

Cross & Bennett agreed to advance money for costs related to the matter which, in the event of settlement or judgment, would be reimbursed in full. Contingent Fee Agreement ¶¶ 4, 6.

The Agreement also provided, consistent with Colorado Rules of Civil Procedure, Rules Governing Contingent Fees, Rule 7 (Form 2), that, if Thorpe and Hamrick terminated the Agreement,

> without wrongful conduct by the attorneys which would cause the attorneys to forfeit any fee, or if the attorneys justifiably withdraw from the representation of the clients, the attorneys may ask the court or other tribunal to order the clients to pay the attorneys a fee based upon the reasonable value of the services provided by the attorneys. If the attorneys and the clients cannot agree how the attorneys are to be compensated in this circumstance, the attorneys will request the court or other tribunal to determine: (1) if the clients have been unfairly or unjustly enriched if the clients do not pay a fee to the attorneys; and (2) the amount of the fee owed, taking into account the nature and complexity of the clients' case, the time and skill devoted to the clients' case by the attorneys, and the benefit obtained by the clients as a result of the attorneys' efforts. Any such fee shall be payable only out of the gross amount collected by or on behalf of the clients and the amount of such fee shall not be greater than the fee that would have been earned by the attorneys if the contingency described in this contingent fee agreement had occurred.

Contingent Fee Agreement ¶ 3.

Thorpe and Hamrick's present qui tam law firm, Kenney & McCafferty, began its representation in January of 2010, seven years after suit was filed, which was long after the bulk of the legal services that resulted in the recovery had already been done by Cross & Bennett, and less than a year before the announcement of intervention by the United States. On information and belief, Kenney & McCafferty agreed with Thorpe and Hamrick to do what work remained for only a 10% contingent fee.

On July 25, 2012, Cross & Bennett filed a Notice of Intention to Enforce Attorney's Lien in Boston in the consolidated qui tam matter, which attached the Notice of Attorney's Lien. On August 1, 2012, Thorpe and Hamrick filed a Response to Cross & Bennett's July 25, 2012

Notice.  On August 9, 2012, Cross & Bennett filed a Response to Thorpe and Hamrick's Response.  Cross & Bennett then filed an Amended Response on August 10, 2012.

Cross & Bennett filed its Motion to Intervene on August 30, 2012.  By the Complaint in Intervention attached thereto, Cross & Bennett seeks to protect, enforce, and reduce to judgment its Colorado attorney's lien on Thorpe and Hamrick's share of the settlement, and further, asks this Court to determine the legal fees and disbursements due and owing to Cross & Bennett for its remarkably successful, seven year representation of Thorpe and Hamrick.  Thorpe and Hamrick have taken the position that Cross & Bennett is not entitled to *any* legal fees and are thereby seeking to reduce their total attorney's fees from an industry-accepted and contractually established 40% to the 10% fee that they are paying their current attorneys.  Quite simply, Thorpe and Hamrick ask this Court to bless their unjust enrichment at the expense of the attorneys who made their recovery possible.

## ARGUMENT

**I.  CROSS & BENNETT POSSESSES A CHARGING LIEN UNDER COLORADO LAW UPON THE SETTLEMENT PROCEEDS OBTAINED BY THORPE AND HAMRICK**

In Colorado, the right to an attorney's lien is created by statute.  *People v. Brown*, 840 P.2d 1085, 1087 (Colo. 1992).  The charging lien is described in C.R.S. 12-5-119, and provides for the attachment of the lien in three circumstances.

> All attorneys and counselors-at-law shall have a lien on [1] any money, property, choses in action, or claims and demands in their hands, [2] on any judgment they may have obtained or assisted in obtaining, in whole or in part, and [3] on any and all claims and demands in suit for any fees or balance of fees due or to become due from any client.

Cross & Bennett asserts a charging lien under prongs two and three.[1]

**A.** **Cross & Bennett Has A Charging Lien On**
**Settlement Proceeds Under The Second Prong of C.R.S. 12-5-119**

The second prong of C.R.S. 12-5-119 authorizes a charging lien upon "any judgment [an

attorney] may have obtained or assisted in obtaining, in whole or in part."

"Judgment" has been broadly construed by Colorado federal courts to mean the final

relief achieved by a client, which includes the relators' share due to Thorpe and Hamrick. For

example, in *Davis*, 2012 WL 975836, at *2, a lawyer asserted a charging lien over settlement

monies obtained from resolution of a Title VII lawsuit. The lawyer had not appeared in the

actual lawsuit and did not negotiate the settlement obtained by the plaintiff client. *Id.* However,

she had represented the plaintiff in an earlier, related proceeding before the EEOC. *Id.* at *1.

Because the lawyer's work before the EEOC "provided the foundation without which" the Title

VII lawsuit could not have been filed, the court held that the lawyer "obtained or assisted in

obtaining *the relief ultimately achieved* by Ms. Davis." *Id.* at *2 (emphasis added). The Court

therefore found that the lawyer "has a valid attorney's lien under § 12–5–119." *Id.* In so

holding, the Court read "judgment" under C.R.S. 12-5-119 to mean "relief ultimately achieved,"

including a settlement. *Id.*

Similarly, in *Deitz*, 2011 WL 723118, *9-10, a lawyer was discharged by her client and

did not negotiate the final settlement in the case at issue. However, the court found that her

efforts were "nevertheless related to and formed the basis of the ultimate settlement as implicitly

recognized by the parties . . . . Accordingly, she should be entitled to benefit from the

settlement." *Id.* at *9. In so holding, the court stated "Turning to the validity of the liens, the

---

[1]Cross & Bennett previously asserted a retaining lien against the notebook computer they purchased to facilitate data mining and document review in this case. As set forth in its Complaint in Intervention, Cross & Bennett seeks only a determination and judgment on its charging lien.

statute grants lien rights in the judgment, *or in this case, the settlement amount*, that the lawyer "obtained or assisted in obtaining, in whole or in part...." *Id.* (*quoting* C.R.S. 12-5-119) (emphasis added). Just as in *Davis* and *Deitz*, the legal work performed by discharged counsel Cross & Bennett formed the foundation for the relators' share obtained by Thorpe and Hamrick in the instant case. Accordingly, Cross & Bennett have a valid charging lien against Thorpe and Hamrick's relators' share.

### B. Cross & Bennett Also Has A Charging Lien On Settlement Proceeds Under The Third Prong of C.R.S. 12-5-119

Pursuant to the third prong of C.R.S. 12-5-119, Cross & Bennett has "a lien on any and all claims and demands in suit for any fees or balance of fees, due or to become due from any client." *Donaldson,* 260 F.2d at 335. Colorado cases have interpreted this prong to cause an attorney's lien to "attach[] to settlement proceeds," for "services provided by an attorney prior to their withdrawal for which they were entitled to be compensated." *Cope*, 140 P.3d at 241. The lien attaches to settlement proceeds regardless of whether the attorney asserting the lien actually negotiated the settlement. *Id.* Therefore, Cross & Bennett have an enforceable interest in the state and federal relators' shares due to Thorpe and Hamrick as a result of GSK's settlement.

### 1. This Case Was "In Suit" For Purposes Of The Third Prong Of C.R.S. 12-5-119 Because It Was "Commenced"

Cross & Bennett's lien attaches to the settlement proceeds according to the plain language of the third prong of C.R.S. 12-5-119, which states that an attorney has a lien on claims and demands "in suit." This action was "in suit" as of January 2, 2003, when Cross & Bennett filed the qui tam complaint in the District of Colorado. Thorpe and Hamrick distort the Colorado cases interpreting "in suit" and wrongly contend that the qui tam action was not actually "in suit" because "it was never served on the defendant." In truth, case after case -- *including those cited*

8

*by Thorpe and Hamrick* -- hold that a case is "in suit" under Colorado law when it is "commenced." Under both Fed. R. Civ. P. 3 and Col. R. of Civil. P. 3, a civil action is "commenced" by the filing of a Complaint with the court.[2] There is no requirement under Colorado or federal rule that a complaint be *served* for an action to be "commenced" and therefore "in suit."

Thorpe and Hamrick rely largely on *In re Forrest A. Heath*, 159 F. Supp. 632, 635-36 (D. Colo. 1958) in support of their position. This reliance is wholly misplaced. In fact, when read properly, *In re Forrest A. Heath* supports Cross & Bennett's position that the case was "in suit" once the action had been filed and thereby commenced.

Thorpe and Hamrick erroneously claim that the District of Colorado held in *Forrest A. Heath* that:

> The modes of proceeding may be various; but, if the right is **litigated between the parties** in the court of justice, the proceeding is a suit. ... A claim is not 'in suit' before a justice **until he has issued summons thereon** and delivered the same to an officer to be served, or by the appearance and agreement of the parties without summons and the case docketed ...."

This citation distorts the holding of *Forrest A. Heath* and is profoundly misleading. Contrary to the assertion of Thorpe and Hamrick, this quotation has no bearing whatsoever on the Colorado attorney lien statute.

The court in *Forrest A. Heath* did not hold the above to be a statement of the law of Colorado. Instead, the District of Colorado was quoting a treatise, 40 Words and Phrases, p. 638, 703, which collected and quoted cases from various states on the meaning of "suit" and "in suit." The quotation concerning issuance of a summons did not address "in suit" under Colorado law,

---

[2] Fed. R. Civ. P. 3 states, "A civil action is commenced by filing a complaint with the court." Col. R. of Civ. P. 3 states, in relevant part, "A civil action is commenced (1) by filing a complaint with the court, or (2) by service of a summons and complaint."

but rather came directly from a West Virginia case, *State v. Wells*, 59 S.E. 743, 744 (1907), that concerned the definition of "in suit" under a West Virginia statute. Significantly, the West Virginia statute, unlike Colorado, provided for commencement of an action either by summons or by the appearance and agreement of the parties without summons, "and not otherwise." *Id.* Under West Virginia law at that time, service of a summons was the only method to put a case "in suit" other than by agreement of the parties.

Incredibly, Thorpe and Hamrick delete all mention of this West Virginia case from their analysis of *Forrest A. Heath*, thereby making it appear as if the court was analyzing Colorado law. To the contrary, there is simply no Colorado statute or court rule that requires service for a case to be deemed commenced and *Forrest A. Heath* does not suggest that there is.

The actual holding of *Forrest A. Heath*, which Thorpe and Hamrick again fail to quote and which confirms the validity of Cross & Bennett's lien, is as follows: "From the foregoing it does not appear that the claimant would be entitled to a lien *because there never was an action commenced in a court of justice.*" (emphasis added). *Forrest A. Heath*, 159 F. Supp. at 636. Therefore, under Colorado law and statute, it is the "commencement" of an action in court that places a case "in suit," and the issuance and service of a summons is irrelevant.

*Forrest A. Heath* was appealed and its holding affirmed by the Tenth Circuit. *Donaldson,* 260 F.2d 333.[3] In its analysis, the Tenth Circuit held that

> although a summons and complaint were prepared and shown to the attorney by appellants, it cannot be said that the claim was in suit. A claim does not become 'in suit' through threat of actions nor preparatory services rendered in contemplation of suit. **Here there was no proceeding commenced in a court of justice. Rule 3, Colo. Rules of Civil Procedure**.

---

[3] Thorpe and Hamrick cite *Donaldson*, but apparently failed to recognize that it was an appeal of the District Court's decision in *Forrest A. Heath*.

*Id.* at 337 (emphasis added).

Thorpe and Hamrick quote the first two sentences but misleadingly omit the highlighted language, which reflects the actual holding of the Tenth Circuit, and definitively establishes that the relevant Colorado Rules of Civil Procedure (unlike the West Virginia statute), *do not* require that a summons be served for a proceeding to be "commenced" under Colorado law.[4]

Thorpe and Hamrick's admission that Cross & Bennett filed the operative federal qui tam lawsuit -- and thereby "commenced" the action -- completely dispenses with their objection to the attorney's lien under 12-5-119. That the Complaint was never served is simply irrelevant to the charging lien under Colorado law.

## II. CROSS & BENNETT PROPERLY ASSERT A LIEN OVER 40% OF THE SETTLEMENT PROCEEDS DUE THORPE AND HAMRICK

Thorpe and Hamrick also erroneously contend that the Notice to Enforce Lien filed by Cross & Bennett is "fatally defective" insofar as it asserts a lien over 40% of the relators' share due Thorpe and Hamrick.

Thorpe and Hamrick seem to suggest that Cross & Bennett are seeking enforcement of their 2007 contingent fee arrangement and then argue that the contingent fee is no longer applicable given that Cross & Bennett have been discharged. In fact, Cross & Bennett are not asking that the contingent fee agreement be deemed enforceable. Cross & Bennett are claiming compensation for their services under a quantum meruit theory and asserting that the value of

---

[4] The essential holding of *Forrest A. Heath* -- that a lien attaches in the "in suit" context upon "commencement" of a lawsuit -- has been affirmed repeatedly in a series of more recent Colorado cases which Thorpe and Hamrick also fail to cite or address. *See In re Campbell*, 26 B.R. 145 (D. Colo. 1983) ("In *Donaldson*, the Court considered the question of when a claim was in suit and concluded that the determinative factor was whether a 'proceeding [had been] commenced in a court of justice.'"); *In re Ranes*, 31 B.R. 70, 72 (Bankr. D. Colo. 1983) (charging lien attaches to all the fruits due a client after a suit is commenced); *In re Oiltech, Inc.*, 38 B.R. 484, 486 (Bankr. D. Nev. 1984) (applying Colorado law and holding that a charging lien "could not attach for services in matters not involved in the suit" because under the statute no lien attaches until the claim is in suit. For a "claim to become 'in suit' there must be a "proceeding commenced in a court of justice.")

their services under the many factors relevant to a quantum meruit determination is up to 40% of the reward claimed by Thorpe and Hamrick.

In support of their argument, Thorpe and Hamrick cite *People v. Radinsky*, 182 Colo. 259 (Colo. 1973), for the proposition that a lien equivalent to the amount that would have been paid under a contingent fee arrangement was excessive. That is not the court's holding. That case involved a disciplinary proceeding against an attorney who refused to turn over his files to successor counsel or withdraw from the case, and then falsely asserted a lien for a fixed fee of $32,600 against the client's personal injury settlement even though the fee agreement was contingent on recovery and no recovery had occurred. *Id.* at 261-62. The attorney sought to justify his claim for $32,600 by claiming that it was 40% of the amount claimed in the complaint. The Colorado Supreme Court rejected the attorney's argument, stating:

> The grievance committee found that the notice of lien which stated that the respondent's agreement with his clients was that they would pay him $32,600 from the proceeds of the suit was misleading, to say the least. In our view, an attorney's lien which misstates facts and is utilized to overreach and to force payment of more than is owed cannot be tolerated. The agreement upon which the attorney's lien was predicated was contingent and granted the respondent, at best, only the right to recover the reasonable value of his services when he was discharged. The respondent's claim was in Quantum meruit and not for the allegedly agreed upon sum of $32,600 . . . . *No agreement existed to pay a fee of $32,600, and the prayer in a complaint for personal injuries, coupled with a contingent-fee contract, does not provide a basis for asserting that such an agreement exists.*

*Id.* at 261-62 (citations omitted and emphasis added). Thus, the court did not say that a fee based on quantum meruit could not reach the amount of the contingency, only that a contingent fee had to be based on the amount recovered, not the amount set forth in the complaint.

Unlike the attorney in *Radinsky*, Cross & Bennett transmitted its files to successor counsel;[5] promptly withdrew from the case with permission of the Court; and did not falsely

---

[5] In fact, even after being terminated from the case by Thorpe and Hamrick, Cross & Bennett, a two-lawyer firm, devoted hundreds of hours to producing, in Bates stamped pdf format, approximately 52,000 pages of

claim entitlement to a fixed fee. Cross & Bennett has properly asserted a right to recover in quantum meruit in an amount to be determined by the Court and not exceeding the amount they would have been paid based on the contingency. Cross & Bennett's lien is consistent with Colorado law governing liens and determinations in quantum meruit.

Thorpe and Hamrick argue that the Contingent Fee Agreement in this case limited Cross & Bennett's right to fees to "the reasonable value of the services provided by the attorneys," quoting from the agreement itself. In addition to the language quoted by Thorpe and Hamrick, the Contingent Fee Agreement also contains the following language consistent with the Colorado Supreme Court's form contingency fee agreement (*see* Form 2, Rule 7 of the Rules Governing Contingent Fees):

> If the attorneys and the clients cannot agree how the attorneys are to be compensated in this circumstance, the attorneys will request the court or other tribunal to determine: (1) if the clients have been unfairly or unjustly enriched if the clients do not pay a fee to the attorneys; and (2) the amount of the fee owed, taking into account the nature and complexity of the clients' case, the time and skill devoted to the clients' case by the attorneys, and the benefit obtained by the clients as a result of the attorneys' efforts. Any such fee shall be payable only out of the gross amount collected by or on behalf of the clients and the amount of *such fee shall not be greater than the fee that would have been earned by the attorneys if the contingency described in this contingent fee agreement had occurred.*

Contingent Fee Agreement ¶ 3 (emphasis added). Thorpe and Hamrick and Cross & Bennett specifically agreed to these provisions.[6]

---

documents at the request of successor counsel. After being granted permission to withdraw by the court, Cross & Bennett still continued to assist successor counsel in locating and producing documents from the file, all in order to help ensure the most favorable outcome for Thorpe and Hamrick.

[6] The quoted language reflects established Colorado law, which specifically contemplates that a fee in quantum meruit may result in a recovery up to the amount of the contingency. Indeed, the Colorado Supreme Court long ago held that when suing for fees based on an implied contract (such as quantum meruit), the total fees to be recovered may equal, although not exceed the amount called for in the contract. *Ownby v. Silverstein*, 194 P. 607, 608 (Colo. 1920). Since then, the Colorado Court of Appeals has consistently recognized this rule. *See e.g.,* In *Joyce v. Elliott*, 857 P.2d 549, 552 (Colo. App. 1993) aff'd, *Elliott v. Joyce*, 88 P.2d 43 (Colo. 1994) (quantum

Cross & Bennett does not dispute that the proper measure of its fees should be determined in quantum meruit; its Complaint in Intervention states as much. Cross & Bennett respectfully assert that the reasonable value of the services provided Thorpe and Hamrick, as determined in accordance with the factors set forth under Colorado law, is up to the full 40% that would have been due Cross & Bennett had the Contingent Fee Agreement continued.

To recover under the theory of quantum meruit, an attorney must show that he conferred a benefit upon the client which was appreciated and accepted by the client under such circumstances that it would be inequitable for the benefit to be retained without payment of its value. *Beeson*, 942 P.2d at 1316. The factors to be considered in determining the amount of a quantum meruit recovery include those listed in Colo. RPC 1.5. *Law Offices of J.E. Losavio, Jr.*, 865 P.2d 934 at 936. Those factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent.

Colo. RPC 1.5.

The weight given to any factor depends on the circumstances of each case, and no one factor is determinative. *Beeson*, 942 P.2d at 1316. Although a contingent fee agreement does

---

meruit recovery is "limited to the total amount of fees called for by the retainer agreement"); *Law Offices of J.E. Losavio, Jr. v. Law Firm of Michael W. McDivitt, P.C.*, 865 P.2d 934 (Colo. App. 1993) (fee based on quantum meruit "may or may not reach the $100,000 limit fixed by the contingency fee contracts."); and *Beeson v. Industrial Claim Appeals Office*, 942 P.2d 1314, 1316 (Colo. App. 1997) (in determining a reasonable fee based on quantum meruit "[t]he existence of a contingency fee contract is determinative only to the extent that it sets the maximum amount permitted").

not remain operative once the representation has been terminated, the quantum meruit analysis allows the court to consider the existence of the prior contingent nature of the fee and the risks inherent in such a fee arrangement would remain relevant. In a case such as here, where the clients have terminated their attorneys as settlement neared to avoid paying the full contingent fee, a court may well decide that any fee less than the full contingency would unjustly enrich the clients at the expense of the attorneys.

For all of these reasons, Cross & Bennett's lien on 40% of Thorpe and Hamrick's settlement proceeds is appropriate.[7]

III.    **THE COURT SHOULD RETAIN 40%
OF SETTLEMENT PROCEEDS DUE THORPE AND HAMRICK
PENDING RESOLUTION OF CROSS & BENNETT'S FEE CLAIM**

By the foregoing, Cross & Bennett has overcome Thorpe & Hamrick's spurious objections to its charging lien. Cross & Bennett has moved to intervene in this action and asked this Court to determine the value of its lien and reduce the lien to judgment. Nevertheless (and perhaps not surprisingly) Thorpe and Hamrick would have this Court disregard the lien and cause 100% of their relators' share to be immediately distributed to Thorpe and Hamrick. For the reasons set forth below, Thorpe and Hamrick's request is without legal basis and, even worse, would render any judgment obtained by Cross & Bennett all but uncollectable.

Cross & Bennett has not stood in the way of the distribution of monies rightfully due to the relators. Cross & Bennett disclaims any interest in funds due to relators Gerahty and Burke and does not object to the distribution of 60% of the funds due to Thorpe and Hamrick, provided

---

[7] Thorpe and Hamrick's attention to the Notice to Enforce Attorney's Lien is peculiar given that, as between attorneys and their former clients, the notice provisions of the statute, and the notices filed in court are largely irrelevant. Once a charging lien attaches, the attorney "does not need to take any further steps to enforce the lien against his or her client." *North Valley Bank v. McGloin, Davenport, Severson & Snow, P.C.,* 251 P.3d 1250, 1254 (Colo. App. 2010).

that the remaining 40% is retained in the Registry of this Court solely to satisfy any award to Cross & Bennett. That is, Cross & Bennett have not objected to the prompt distribution of approximately $45 million to Thorpe and Hamrick. In asking the Court to retain the remaining 40%, Cross & Bennett simply seeks to maintain the status quo and keep those funds available to satisfy the judgment of this Court. As detailed below, causing those funds to be distributed to Thorpe and Hamrick prior to a decision by this Court could make it very difficult for Cross & Bennett to collect their fee – a fee that has been unpaid for approximately 10 years. In contrast, there is little prejudice or hardship to Thorpe and Hamrick in having these funds held.

A.     **The Court May Cause Funds To Be Deposited Into Its Registry In Respect Of Cross & Bennett's Attorney's Lien**

Thorpe and Hamrick rely upon *LaRiviere, Grubman & Payne, LLP v. Phillips*, No. 07-cv-01723, 2010 U.S. Dist. LEXIS 45657, at *10 (D. Colo. Mar. 31, 2010) for the proposition that Cross and Bennett does not have a property interest in the liened funds and, therefore, cannot request that the funds be retained by the Court. But *LaRiviere* did not address the propriety of an escrow request pursuant to an attorney's lien, like that presented here. Instead, in that case, lawyers sued their former client for conversion of funds allegedly subject to lien. *Id.* at *2. The Court held that the lien had not been reduced to a judgment, and therefore, the lawyer did not have a "presently enforceable right" that "may then be considered a property right" in the funds. *Id.* at *4. Absent a property right, a claim for conversion could not survive.

In the instant case, Cross & Bennett is not asserting a present property interest in the lien funds, such as required for a claim of conversion. Instead, having filed the operative qui tam complaint, provided Thorpe and Hamrick with excellent legal services for seven years, and created the foundation upon which settlement was laid in this matter, Cross & Bennett has an equitable lien interest in 40% of the relators' share. As *LaRiviere* makes clear, an attorney's lien

is "a charge upon the thing, which is protected in equity." *Id.* (*citing In re Marriage of Mitchell*, 55 P.3d 183, 185-86 (Colo. Ct. App. 2002)). [8] Cross & Bennett has, by its Motion to Intervene and its Complaint in Intervention, taken the necessary steps to enforce its lien.

Moreover, federal courts have ordered escrow of funds without entry of an order of attachment. For example in *Zebrowski v. Hanna*, 973 F.2d 1001, 1004 (1st Cir. 1992), condominium purchasers sued a seller for fraud. The seller countersued for unpaid mortgage payments and moved to attach funds equal to the amount of the unpaid sums. The court denied the motion to attach the funds and instead ordered that the purchasers place the funds in an escrow account. *Id.* at 1002-03. When the purchasers failed to make the deposits into escrow, the Court ordered that the full amount be placed in escrow. *Id.* at 1003. The First Circuit held that such order was valid because "a court has inherent power to regulate the litigation before it in order to preserve money likely to be the subject of the final judgment." *Id.* at 1004. That is precisely the power that this Court can and should exercise here.

### B. The Court's Retention Of Funds Subject To Lien Would Avoid Great Prejudice To Cross & Bennett

It has been nearly ten years since Cross & Bennett began its representation of Thorpe and Hamrick during which time it has received no compensation for its time and effort. The Court should exercise its authority to retain 40% of the relators' share, subject to Cross & Bennett's charging lien, to avoid considerable harm to Cross & Bennett. Indeed, releasing the liened funds prior to adjudication of Cross & Bennett's claim would greatly imperil their recovery

---

[8] The other cases cited by Thorpe and Hamrick are similarly inapposite. *Textron Fin. Corp. v. Freeman*, No. 09-087S, 2010 U.S. Dist. LEXIS 141086 (D.R.I. Oct. 28, 2010) addressed a claim for breach of contract. *Buscaglia v. Taburno*, No. 09 2196, 2010 U.S. Dist. LEXIS 83078 (D.P.R. Apr. 22, 2010) considered breach of an express or implied agreement. In neither case did the party seeking to enjoin the distribution of funds possess an attorney's lien or other equitable interest, such as those held by Cross & Bennett here.

Thorpe and Hamrick have made clear that they will stop at nothing to ensure that Cross & Bennett are not compensated for their legal services.  As examples, Thorpe sent the following emails towards the end of the representation, when Cross & Bennett refused to renegotiate its Contingent Fee Agreement:

- On October 9, 2009, Thorpe sent Cross an email stating "As you said to us...How much money do you need. Well, we want every penny we deserve at this stage….In the end, you may get nothing and I am not sure you deserve anything after talking to other counsel and how this matter was handled since I walked into your office. On the other hand you may get something, but I will have the money to fight you as long as you want or Counsel willing to do it."  (*See* **Exhibit 2** hereto[9]).

- On October 22, 2009, Thorpe sent Cross an email in which he said, "You need to think about your situation, as if any more happens that I deem detrimental to our case..one thing-you will have done it to yourself. You hold your own future as to how you behave, post termination. My legal options are endless, and could be highly detrimental to your future in the legal profession. (not just my opinion)…..Please do not let your emotions ruin your career, you have more money than you need right now...as you always told us "how much do you need?"  (*See* **Exhibit 3** hereto).

- On October 30, 2009, Thorpe sent an email to Cross in which he stated "Please be aware of what I said, that if you did one more thing that was not only unbalanced as to your mental state, as well as VIOLATING my attorney client privilege, you would trigger a malpractice suit and we would attempt to deny you anything in the matter, up to and including any attorney fees and costs. You blew your mediation chance, in other words, and furthered the malpractice issues….Get over it, you are finished and you did it to yourself."  (*See* **Exhibit 4** hereto).

Thorpe and Hamrick have since fulfilled their promise to attempt to deny Cross & Bennett its rightful recovery.  On November 11, 2009, Thorpe and Hamrick filed a specious formal grievance with the Colorado Supreme Court's Office of Regulatory Counsel, which investigates and prosecutes attorney discipline matters in that state, alleging that Cross had committed malpractice and various ethical violations.  On November 23, 2009, the Office of

---

[9] Filed with this motion are Exhibits 1 and 5 hereto.  Given the nature of Exhibits 2-4 and 6-7, Cross & Bennett is filing a separate motion for leave to file those exhibits under seal.

Disciplinary Counsel informed Thorpe and Hamrick that it had reviewed the allegations of misconduct and "determined that the information you provided *does not set forth facts, which if proven, would constitute grounds for the imposition of discipline* by the offices of the Supreme Court of Colorado. Therefore we are closing this matter and will take no further action on your request." (*See* **Exhibit 5** hereto (emphasis added)).

And yet, still, on September 1, 2012, Thorpe and Hamrick filed a complaint with this Court against Cross & Bennett, alleging, *inter alia*, malpractice and various ethical violations. Cross & Bennett will address these allegations in due course.

If the Court fails to retain the funds subject to lien and Cross & Bennett is successful in obtaining a judgment, enforcing that judgment against Thorpe and Hamrick would prove highly problematic, expensive, and potentially dangerous. Throughout the course of the qui tam action, Thorpe threatened the government and even Hamrick – anyone he viewed as standing in the way of his maximum financial recovery. As examples,

- On March 14, 2003, Thorpe wrote that "I will tell you a year in advance that there will be another Ruby Ridge at the Thorpe Ranch, if they [the federal government] use us and screw us." (*See* **Exhibit 6** hereto).

- On January 27, 2007, Thorpe wrote to Hamrick and threatened to cut him out of the case: "I will send you my lesser offer on Monday, and you can hope that your attorney is better than mine. If a 1% premium FOR YOU over what I get is not enough, then you go ahead and decline it. If you can find a document that says you get 1% more than me, then show it to me. In fact, if you can find a document that says I am indebted to you for 50% , show that to me. If you have made your decision, that if fine too. I said I would give you until Monday, make it 7PM your time, unless you, again -want to get some legal advice. (*See* **Exhibit 7** hereto).

Thorpe and, to a lesser extent, Hamrick's bullying tactics and repeated threats evidence a willingness to engage in any means to deprive Cross & Bennett of their well earned fees. Armed with tens of millions of dollars, Thorpe and Hamrick would most certainly make it difficult for Cross & Bennett to recoup funds that had already been paid out to Thorpe and Hamrick.

In contrast to the harm that would be caused to Cross & Bennett by release of the settlement funds, there is little prejudice to Thorpe and Hamrick by the Court's temporary retention of 40% of the relators' share. Cross & Bennett has requested that its Complaint in Intervention be heard on an expedited basis, so monies would be subject to escrow for as short a period as possible. Even more importantly, Cross & Bennett does not object to Thorpe and Hamrick's prompt receipt of approximately *$45 million*, more than enough for them to make do for the limited time it takes to resolve this dispute.

Finally, if the Court believes that an attachment is required to maintain the status quo, then, upon granting the Motion To Intervene, Cross & Bennett will immediately move for such relief. Given that the Court has not yet acted upon Cross & Bennett's Motion to Intervene, a separate Motion for Attachment would be premature at this time.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court should deny in its entirety the Motion of Thorpe and Hamrick to Strike Cross & Bennett's Attorney's Lien and Notice of Attorney's Lien and For Release of Settlement Funds. Further, the Court should order that, pursuant to the Attorney's Lien, 40% of Thorpe and Hamrick's federal and state recoveries, and any other monies subsequently recovered by Thorpe and Hamrick in this action, be retained in the Registry of the Court and not released until further order of this Court.

Dated:  September 14, 2012

Respectfully submitted,

CROSS & BENNETT, L.L.C.

/s/ Allison D. Burroughs
Allison D. Burroughs (BBO # 609346)
Benjamin L. Mack (BBO # 661590)
NUTTER, McCLENNEN & FISH, LLP
155 Seaport Boulevard
Boston, MA  02110
(617) 439-2775
aburroughs@nutter.com
bmack@nutter.com

## CERTIFICATE OF SERVICE

I hereby certify that, on September 14, this document (filed through the ECF system) will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated:  September 14, 2012                    /s/ Allison D. Burroughs