UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03-10641-RWZ

UNITED STATES OF AMERICA *ex rel.* Gregory Thorpe, *et al.*

v.

GLAXOSMITHKLINE PLC, *et al.*

MEMORANDUM OF DECISION

March 6, 2015

ZOBEL, D.J.

Plaintiff Blair Hamrick brought this suit under the anti-retaliation provision of the False Claims Act ("FCA"), 31 U.S.C. § 3730(h), for his termination from employment at the defendant GlaxoSmithKline ("GSK"). GSK has moved for summary judgment.

**I.    Background**

Plaintiff spills much ink recounting his long and difficult history at the company, including various perceived and actual slights and mistreatment, all of which is irrelevant to the present cause of action. The essential facts for this opinion follow, taken from the undisputed record.

Blair Hamrick began work at GSK as a pharmaceutical sales representative in Colorado in 1997. On January 30, 2002, plaintiff met with a GSK Compliance Officer to discuss plaintiff's allegations regarding off-label drug presentations sponsored by GSK.

On October 19, 2003, Hamrick was cited for driving under the influence of alcohol ("DUI"). On October 24, 2003, he voluntarily took a medical leave of absence because of anxiety and symptoms of post-traumatic stress disorder. On January 22, 2004, Hamrick pled guilty to driving while alcohol impaired ("DWAI") in connection with the October 2003 DUI citation.

Plaintiff returned to work on January 27, 2004, in his then current position as Senior Executive Sales Representative. On January 29, he had a call with Gail Fletcher and Claudia Pattison, managers in the Human Resources Department ("HR"), concerning his allegations of off-label drug presentations. On February 12, he met with Pattison to continue discussing his concerns regarding off-label drug presentations.

During the February 12, 2004, meeting with Pattison, plaintiff expressed anger towards his co-worker Peter Copeland, saying that he "would never do this, but ... [Peter] is lucky I don't rip his trachea out of his throat." Pattison was particularly concerned about this violent ideation, as she was aware Hamrick in fact carried a gun.

On March 16, 2004, Hamrick attended a GSK conference in Dallas, Texas. During the conference, while under the influence of prescription anti-anxiety medications and alcohol, he made several threats of violence against GSK managers. Three GSK employees reported plaintiff stating, and plaintiff does not dispute stating, the following:

- "I hate this company. I've hated it since the merger. I'd like to take a gun and shoot some people."

- "[I]f there's one thing I need from a 30-day psych leave, it's another leave.

> You don't understand, I'm obsessed with these thoughts. Let me give you an example. I've been having these dreams where I am in a wrestling match with Jerry [Nelson] and Pat [Keith] and I hit Jerry in the eye and his eye pops out and I hit Pat and crush his windpipe."

- "I'd like to kill [Jerry Nelson]. No, I wouldn't have any remorse whatsoever. I'd like to kill him."

- "I want to kill that fucker [Pat Keith]."

- Hamrick was also reported to have said he was having dreams of jamming his thumbs into Pat Keith's eyes and ripping the eyeballs out.

GSK's "Violence-Free Workplace Policy" states that

"[a]ny person who threatens, [or] exhibits threatening behavior ... on [GSK] property or at [Gsk] sponsored events will be removed from the premises immediately, and will remain off premises pending the outcome of an investigation. A timely investigation will be made concerning the allegations. Should the investigation substantiate that violations of this policy have ocurred, [GSK] will initiate a decisive and appropriate response."

Pursuant to that policy, Hamrick was immediately placed on administrative leave with pay pending an investigation into his statements in Dallas.

During this administrative leave, GSK became aware of Hamrick's DUI citation and DWAI conviction through its annual motor vehicle record check of those who, like Hamrick, possessed company-owned vehicles. He had not reported either occurrence to GSK, in violation of company policy.

In light of the reason for Hamrick's leave, GSK requested he undergo a fitness for duty ("FFD") evaluation on April 2, 2014, with an understanding by Hamrick that refusal to undergo the FFD would be grounds for termination. In response to this request, Hamrick provided a letter from his own psychiatrist, Dr. Crandall, stating her

3

opinion that Hamrick is capable of performing his job responsibilities at GSK. Doctor Crandall had not evaluated Hamrick since his violent threats.

On April 19, plaintiff sent GSK a request for severance. On June 2, GSK responded with a counter-offer, and on June 6, plaintiff rejected the counter-offer and stated that he no longer wished to resign.

GSK's then Director of HR, Bill Reedy, scheduled a meeting with Hamrick on June 23 to discuss Hamrick's allegations about off-label marketing and his violations of policy (his driving offense and his threats of violence). Hamrick was informed that, per company policy, he could be accompanied by his attorney when GSK's attorneys were present during the meeting, but not during the HR portion of the meeting when no GSK attorneys would be present, which would cover his conduct issues.

On June 22, Hamrick's attorney, Keith Cross, informed Mr. Reedy that Hamrick would not meet with GSK without his attorney present. Due to this refusal, the meeting was cancelled. On September 1, GSK's outside counsel, Geoffrey Hobart, sent Cross a letter concerning Hamrick's refusal to meet with GSK, and explained that Hamrick was bound by GSK's Code of Conduct, and that "failure to fully cooperate with an investigation of an incident that occurs in the workplace" would be a further violation of company policy, potentially subjecting Mr. Hamrick to termination.

There followed a series of communications between counsel for the parties. On September 3, Cross responded, setting multiple conditions and terms of any meeting between Hamrick and GSK. On September 20, Hobart reiterated the company's request for an investigatory meeting and again stated that Cross could attend the

4

portions of the meeting regarding off-label marketing but not those portions solely concerning the HR investigation of Hamrick's threats and unreported driving infraction. On September 24, Cross informed Hobart that plaintiff would not meet with GSK. On October 13, GSK informed Hamrick, through his attorney, that he had been terminated due to his threatening and violent statements regarding GSK employees, his failure to report his DUI citation and DWAI conviction, and his refusal to cooperate with GSK's investigation.

## II. Standard of Review

Summary judgment is appropriate when the moving party shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering whether or not a genuine issue of material fact exists, the court "must view the evidence in the light most favorable to the opposing party." Tolan v. Cotton,134 S. Ct. 1861, 1866 (2014). Only if "a reasonable jury, drawing favorable inferences, could resolve [the motion] in favor of the nonmoving party" is the dispute genuine. See Travers v. Flight Sers. & Sys., Inc., 737 F.3d 144, 146 (1st Cir. 2013).

## III. Analysis

The burden in this case is on the plaintiff to show (i) that he was engaged in conduct protected under the FCA; (ii) the employer had knowledge of this conduct; and (iii) the employer retaliated against the employee because of this conduct." Harrington v. Aggregate Indus. Ne. Region, Inc., 668 F.3d 25, 31 (1st Cir. 2012). Once this *prima facie* showing is made, the burden shifts to the employer to provide a legitimate, non-

5

retaliatory reason for the adverse employment action. When the employer provides such a reason, it is the plaintiff's burden to raise a jury question as to whether the reason provided is merely "a pretext calculated to mask retaliation." Id.

The standard for this case is laid out in the First Circuit's decision in Travers v. Flight Services & Systems, Inc., 737 F.3d 144 (1st Cir. 2013). In Travers, the First Circuit reversed a trial court's grant of summary judgment in an employment retaliation case:

> "[T]he applicable standard requires "but-for" causation. ... [Plaintiff]'s claim would fail if [defendant] would have fired him absent retaliatory animus. And [defendant] also correctly reasons that the evidence here would allow a reasonable jury to conclude that [defendant] would have fired [plaintiff] ... even if he had never [engaged in protected activity]. On ... summary judgment ... , however, **the question is not whether a reasonable jury could find that [defendant] would have fired [plaintiff] even in the absence of retaliatory intent. Rather, the question pertinent to our review of summary judgment is whether no reasonable jury could find otherwise**."

Travers, 737 F.3d at 148 (emphasis added).

There is no dispute that Hamrick was engaged in protected activity and that GSK was aware of that activity from as early as 2002. The decision to terminate Hamrick came only shortly after implicit confirmation to GSK that he was, in fact, a *qui tam* relator. This temporal proximity is, perhaps, sufficient to give an inference of animus, so I assume, without deciding, that plaintiff's *prima facie* burden was met.

Defendant provides a substantial non-retaliatory basis for its decision to terminate Hamrick, linked to three main things. First, the company cites Hamrick's erratic behavior and verbal threats made before and during a company retreat in March

6

2004.  Second, it points out Hamrick's failure to disclose to the company his conviction of DWAI, in contravention of company policy requiring its disclosure.  Third, GSK notes that company policy requires the termination of employees who refuse to cooperate with internal investigations, and defendant's refusal to fully comply with GSK's investigation into his erratic behavior and fitness for duty, by setting conditions to his meeting with the company.  These events, taken together, are more than enough to shift the burden back to plaintiff.

The remaining question is whether plaintiff can point to sufficient evidence to allow a reasonable jury to find that, but for his protected whistleblowing activity, he would not have been terminated.  Plaintiff is right that he may, to some extent, rely on timing-driven inference to make out his case for retaliation to a jury.  See Harrington, 668 F.3d at 33 (the "sequence of occurrences leading up to a challenged decision, and close temporal proximity between relevant events" can "give rise to an inference of pretext.").  However, other than a generic pattern of alleged mistreatment, going back several years and attributable to many causes unrelated to his protected activity, plaintiff has produced no evidence whatsoever, other than the loose temporal inference, to support his allegation of retaliatory firing.  In the face of the overwhelming and largely undisputed evidence of defendant's serious misconduct immediately preceding the termination of his employment, he has failed to produce any evidence to create a genuine issue of material fact, i.e., to provide a basis for a reasonable jury to conclude that, but for his whistleblowing, he would not have been terminated.

### IV.  Conclusion

Defendant's motion for summary judgment is  ALLOWED.

Judgment may be entered for the defendant.

| March 6, 2015 | /s/Rya W. Zobel |
|---|---|
| DATE | RYA W. ZOBEL<br>UNITED STATES DISTRICT JUDGE |